UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
**JEAN NEL BAZILE,**                    )
                                                    )        CIVIL ACTION
               **Plaintiff,**            )
                                                    )        NO.  4:18-40182-TSH
              **v.**                             )
                                                    )
**UPS GROUND FREIGHT, INC., &**  )
**ALBERT ABBOTT,**                    )
                                                    )
               **Defendants.**          )
_____

**ORDER AND MEMORANDUM ON DEFENDANTS' PARTIAL MOTION TO DISMISS**
**(Docket No. 15)**

**September 17, 2019**

**HILLMAN, D.J.**

UPS Ground Freight, Inc. ("UPS") and Albert Abbott ("Mr. Abbott") (collectively, "Defendants") move to dismiss the assault and battery, interference with civil rights, and intentional infliction of emotional distress claims asserted by Jean Nel Bazile ("Plaintiff"). (Docket No. 15).  Because Massachusetts state law preempts Plaintiff's claims, Defendants' motion is ***granted*** as to Counts XI, XIII, and XIV.

**Background**

The following facts are taken from Plaintiff's complaint and assumed true for the purposes of this motion.  UPS employed Plaintiff, a black Haitian male, as a mechanic in its Southborough, Massachusetts, facility.  (Docket No. 1 at 2).  Mr. Abbott was Plaintiff's immediate supervisor.  (Docket No. 1 at 2).  Plaintiff initially worked a 2:00pm through 10:00pm

shift Monday through Thursday and a 6:00am to 2:00pm shift Friday.[1] (Docket No. 1 at 2). In July 2015, the only other mechanic working in the Southborough facility left the company. (Docket No. 1 at 3). UPS changed Plaintiff's schedule to 6:00am to 2:00pm Monday through Friday. (Docket No. 1 at 3).

Around this time, Mr. Abbott began subjecting Plaintiff to an increasingly hostile work environment. (Docket No. 1 at 3). He changed Plaintiff's start time on Fridays to 2:30pm despite the previously-granted religious accommodation. (Docket No. 1 at 3). When Plaintiff objected, Mr. Abbott denied that UPS had ever given him an accommodation. (Docket No. 1 at 3). Mr. Abbott made Plaintiff fill out a new formal request for accommodation and forced Plaintiff to report at 2:30pm on Fridays while he considered the request. (Docket No. 1 at 3).

On another occasion, Mr. Abbott grabbed the bible Plaintiff kept in his toolbox and asked, "Why is this here? Take this book and put it in your locker. I want this book gone tomorrow. I don't ever want to come in again and see your shit all over my stuff. Do you want to see the picture that I took, you fucking pain in the ass? Take this fucking bible and get it out of here." (Docket No. 1 at 3). Mr. Abbott accused Plaintiff of reading the bible during company time and threw it across the room. (Docket No. 1 at 4).

Mr. Abbott changed Plaintiff's hours two more times, eventually requiring Plaintiff to report at 4:00am. (Docket No. 1 at 4). On November 2, 2015, Plaintiff clocked in 15 minutes late because the main door was locked. (Docket No. 1 at 4). Mr. Abbott harassed Plaintiff for being late. (Docket No. 1 at 4). Later that day as his shift ended, Plaintiff caught Mr. Abbott smoking inside the building. (Docket No. 1 at 5). Plaintiff took a picture with his cell phone.

---

[1]   Plaintiff's Friday shift differed from his Monday through Thursday shifts because he requested a religious accommodation to not work after sunset on Fridays.

(Docket No. 1 at 5). Mr. Abbott yelled at Plaintiff to delete the picture. (Docket No. 1 at 5). Plaintiff ignored the demand and headed for his car. (Docket No. 1 at 5). Mr. Abbott followed and stood in front of Plaintiff's car door. (Docket No. 1 at 5). Mr. Abbott then yelled that Plaintiff could not go home until he gave Mr. Abbott the picture. (Docket No. 1 at 5). When Plaintiff managed to open his car door, Mr. Abbott pushed him and slammed the car door shut. (Docket No. 1 at 5).

Plaintiff began to experience symptoms of fatigue and stress. (Docket No. 1 at 6). He consulted a doctor who provided a note restricting Plaintiff from beginning work before 6:00am. (Docket No. 1 at 6). When Plaintiff submitted this note to UPS, Mr. Abbott refused to let Plaintiff work until a UPS doctor examined and cleared him. (Docket No. 1 at 6). Plaintiff scheduled an appointment with the UPS doctor for December 3, 2015. (Docket No. 1 at 6). When he showed up for the appointment, however, the doctor informed him that an unknown individual had cancelled it on November 24, 2015. (Docket No. 1 at 6). Mr. Abbott then told Plaintiff to get his own doctor to clear him for work without restriction. (Docket No. 1 at 6). Plaintiff received a note from his doctor clearing him to work without restrictions on January 7, 2016. (Docket No. 1 at 7).

When Plaintiff returned to work on February 21, 2016, the harassment resumed. (Docket No. 1 at 7–8). Mr. Abbott again scheduled Plaintiff's shifts to begin at 4:00am. (Docket No. 1 at 7). And on March 13, 2016, Mr. Abbott blocked Plaintiff from leaving the spare parts room while he asked Plaintiff a series of questions. (Docket No. 1 at 8). A UPS driver witnessed this incident and threatened to report Mr. Abbott. (Docket No. 1 at 9). Plaintiff was terminated three days later. (Docket No. 1 at 9).

After exhausting his remedies with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission, Plaintiff filed this action. (Docket No. 1 at 10). He asserts sixteen claims against the Defendants. Relevant to this motion, he alleges assault and battery (Count XI), interference with civil rights (Count XIII), and intentional infliction of emotional distress (Count XIV).

### **Legal Standard**

In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc*., 199 F.3d 68, 69 (1st Cir. 2000). To survive the motion, the complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

A defendant may raise an affirmative defense in a motion to dismiss "provided that 'the facts establishing the defense [are] clear "on the face of the plaintiff's pleadings."'" *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc*., 524 F.3d 315, 320 (1st Cir. 2008) (quoting *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001)).

**Discussion**

*1. Counts XI (assault and battery) and XIV (intentional infliction of emotional distress)*

Defendants contend that the exclusivity provision of the Massachusetts Workers' Compensation Act (the "MWCA"), M.G.L. c. 152 § 24, bars Plaintiff's assault and battery and intentional infliction of emotional distress claims against Mr. Abbott.  (Docket No. 16 at 3).  Plaintiff argues that Mr. Abbott's actions fall outside the scope of the MWCA because they were not related to his employment.  (Docket No. 19 at 1–2).

The MWCA provides the "exclusive remedy for injuries to an employee suffered in the course of employment, regardless of the wrongfulness of the employer's conduct, or the foreseeability of harm."  *Estate of Moulton v. Puopolo*, 467 Mass. 478, 482–83 (2014) (internal citations omitted).  Because a covered employee may not both "recover compensation benefits under the act and . . . sue her employer to recover for an injury covered by the act," *id.* at 483, "[c]ommon law actions are barred by the exclusivity provision of the workers' compensation act where" they arise out of the employment relationship, *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558 (1996).  This bar extends to intentional torts committed by a co-employee "in the course of the employment relationship." *Anzalone v. Massachusetts Bay Transp. Auth.*, 403 Mass. 119, 124 (1988).  "An employee has acted in the course of employment whenever he has, on the employer's premises, engaged in conduct consistent with his contract of hire and pertinent or incidental to his employment."  *Fredette v. Simpson*, 440 Mass. 263, 266 (2003).

Mr. Abbott committed the acts cited by Plaintiff—for example, shouting at Plaintiff; blocking Plaintiff from entering his car; throwing Plaintiff's bible; or preventing Plaintiff from leaving the spare parts room—on UPS premises during working hours and while acting as

Plaintiff's supervisor.[2] Given the breadth of the "course of employment test," *see Fredette*, 440 Mass. at 266, the Court finds this conduct "incidental to" Mr. Abbott's employment. Because the exclusivity provision of the MWCA bars Plaintiff's assault and battery and intentional infliction of emotional distress claims against a co-employee, the Court ***grants*** the motion to dismiss Counts XI and XIV.

2. *Count XIV (interference with civil rights)*

Plaintiff bases his civil rights claim on the right to a smoke-free workplace pursuant to Section 22 of Chapter 270 of the Massachusetts General Laws ("Section 22"). (Docket No. 19 at 4). Defendant argues that Plaintiff cannot enforce a violation of Section 22 through the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12 §§ 11H, 11I, because Section 22 establishes its own comprehensive remedial scheme of enforcement. (Docket No. 22 at 4). The Court agrees.

Section 22 sets up a statutory structure for enforcing violations. It provides that "[t]he local board of health, the department of public health, the local inspection department or the equivalent, a municipal government or its agent, and the alcoholic beverages control commission shall enforce this section." M.G.L. c. 270 § 22(m)(1). Complainants may "register a complaint to initiate an investigation and enforcement with" these agencies, M.G.L. c. 270 § 22(m)(3), but control of the investigation and enforcement rests with the agencies. Section 22 only provides for a judicial remedy "at the request of" these agencies. M.G.L. c. 270 § 22(m)(4).

---

[2] While Mr. Abbott prevented Plaintiff from leaving the premises after Plaintiff photographed him smoking, the incident began inside the Southborough facility. That Mr. Abbott then followed Plaintiff to the parking lot does not render this incident outside the scope of his employment. Additionally, although Plaintiff had finished his shift for the day, Plaintiff does not allege that Mr. Abbott had finished for the day or that the incident occurred outside of Mr. Abbott's working hours.

The Massachusetts Supreme Judicial Court has not determined whether Section 22 creates a private right of action that a plaintiff may enforce through the MCRA. In the absence of governing law, the Court turns to interpretations of other statutes for guidance. The Massachusetts Supreme Judicial Court has consistently refused to allow individuals to assert claims under the MCRA if they may assert a claim under the "comprehensive remedial scheme" of Chapter 151B, M.G.L. c. 151B. *See, e.g.*, *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 555 (1996); *Guzman v. Lowinger*, 422 Mass. 570, 571 (1996). For example, in *Green*, the Massachusetts Supreme Judicial Court declined to allow a plaintiff to file a sexual harassment claim under the MCRA and Chapter 151B because "[t]o permit such duplication of remedies would allow claimants to bypass the procedural prerequisites defined by the [L]egislature in [G.L. c. 151B], crippling the effectiveness of this specific statutory remedy for discrimination in employment." 422 Mass. at 558 (quoting *Bergeson v. Franchi*, 783 F. Supp. 713, 721 (D. Mass. 1992)).

Because Section 22, like Chapter 151B, sets forth a comprehensive enforcement scheme to enforce the granted rights, this Court determines that Plaintiff cannot assert a claim under the MCRA.[3] *See Belonni v. Reservoir Nursing Ctr.*, No. 907558, 1994 WL 879457, at *3 (Mass. Super. Jan. 18, 1994); *see also Mouradian v. Gen. Elec. Co.,* 23 Mass. App. Ct. 538, 543 (1987) ("In the circumstances, G.L. c. 12, §§ 11H and 11I, do not create an independent right to vindicate an alleged wrong which might have been the subject of investigation and possible

---

[3] The Court also notes that this result is consistent with the case law underlying 42 U.S.C. § 1983, upon which the MCRA was modeled. *See Duarte v. Healy*, 405 Mass. 43, 46–47 (1989). In § 1983 actions, the State may rebut the presumption that an individual may assert a statutory right through § 1983 if the statute creates a "comprehensive enforcement scheme that is incompatible with individual enforcement." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)).

vindication under G.L. c. 151B, were it not for Mouradian's delay."). To allow otherwise would "cripple[e] the effectiveness of th[e] specific statutory remedy" provided by Section 22, which specifically provides for enforcement by certain agencies. The Court thus ***grants*** the motion to dismiss Count XIII.

## Conclusion

For the reasons stated above, Defendants' motion is ***granted***. (Docket No. 15). The Court dismisses Counts XI, XIII, and XIV.

**SO ORDERED**

***/s/ Timothy S. Hillman***
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
